1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

BENJAMIN R. NEESE,           )
                             )   No. CV-10-00296-CI
        Plaintiff,           )
                             )   ORDER DENYING PLAINTIFF'S
v.                           )   MOTION FOR SUMMARY JUDGMENT
                             )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner )   MOTION FOR SUMMARY JUDGMENT
of Social Security,          )
                             )
        Defendant.           )
                             )

14    BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF

15  No. 13, 20.)  Attorney David L. Lybbert represents Benjamin Neese

16  (Plaintiff); Special Assistant United States Attorney Franco L.

17  Becia represents the Commissioner of Social Security (Defendant).

18  The parties have consented to proceed before a magistrate judge.

19  (ECF No. 6.)  After reviewing the administrative record and briefs

20  filed by the parties, the court **DENIES** Plaintiff's Motion for

21  Summary Judgment, and directs entry of judgment for Defendant.

22                          **JURISDICTION**

23    Plaintiff protectively filed for disability insurance benefits

24  (DIB) and Supplemental Security Income (SSI) on May 3, 2007. (Tr.

25  128.)  He alleges disability due to "bipolar/manic depression/spinal

26  bifida/ back fusion" with an onset date of September 15, 2005. (Tr.

27  118.)   Benefits were denied initially and on reconsideration.

28

Plaintiff timely requested a hearing before an administrative law judge (ALJ), which was held before ALJ Michael Hertzig on October 16, 2009. (Tr. 27-41.) Plaintiff, who was represented by counsel, testified. Vocational expert Daniel McKinny (VE) was present but did not testify. (Tr. 27-28.) The ALJ denied benefits on November 3, 2009, and the Appeals Council denied review. (Tr. 1-4, 17-26.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

substitute its judgment for that of the Commissioner. *Tackett*, 180
F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
Nevertheless, a decision supported by substantial evidence will
still be set aside if the proper legal standards were not applied in
weighing the evidence and making the decision. *Brawner v. Secretary
of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If
there is substantial evidence to support the administrative
findings, or if there is conflicting evidence that will support a
finding of either disability or non-disability, the finding of the
Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-
1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the
requirements necessary to establish disability:

> Under the Social Security Act, individuals who are
> "under a disability" are eligible to receive benefits. 42
> U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
> medically determinable physical or mental impairment"
> which prevents one from engaging "in any substantial
> gainful activity" and is expected to result in death or
> last "for a continuous period of not less than 12 months."
> 42 U.S.C. § 423(d)(1)(A). Such an impairment must result
> from "anatomical, physiological, or psychological
> abnormalities which are demonstrable by medically
> acceptable clinical and laboratory diagnostic techniques."
> 42 U.S.C. § 423(d)(3). The Act also provides that a
> claimant will be eligible for benefits only if his
> impairments "are of such severity that he is not only
> unable to do his previous work but cannot, considering his
> age, education and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus,
> the definition of disability consists of both medical and
> vocational components.
>
> In evaluating whether a claimant suffers from a
> disability, an ALJ must apply a five-step sequential
> inquiry addressing both components of the definition,
> until a question is answered affirmatively or negatively
> in such a way that an ultimate determination can be made.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant cannot do past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. In June 2004, ALJ R.J. Payne found Plaintiff disabled under Listing 1.04A for a closed period ending on October 7, 2003. (Tr. 29, 48.) Plaintiff reapplied for benefits in May 2007, which were denied initially and on reconsideration. Plaintiff requested a hearing, which was held in October 2009 before ALJ Hertzig.

At the time of the hearing, Plaintiff was 31 years old, unmarried, and living with his parents. (Tr. 32.) He stated he has a daughter who does not live with him. (Tr. 33-34.) He reported a ninth grade education and past work as a construction laborer, with his last job ending in July 2006. (Tr. 32, 118-19, 123.) Plaintiff testified he had a brief incarceration in 2005 for a drug-related conviction. (Tr 32, 34-35.) His representative stated Plaintiff could no longer do regular work due to disabling mental health problems. (Tr. 30.)

## ADMINISTRATIVE DECISION

ALJ Hertzig found prior concurrent claims filed in November 2005, which were denied in February 2006, were not timely appealed. He found no reason was presented that warranted reopening the February 2006 determinations.[1] (Tr. 17.) He specifically noted that evidence existing at the time of the February 2006 decision was considered in this case "strictly for the purpose of establishing medical history." (*Id*.) The ALJ then found Plaintiff met insured status requirements for DIB through March 31, 2008. (Tr. 25.) At step one of the sequential evaluation process, he found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 15, 2005. (*Id*.) He found Plaintiff had severe impairments of "status post 2003 lumbar fusion with more recent MRI evidence of minor degenerative changes, depressive disorder, anxiety, and a history of substance abuse." (*Id*.) He

_____

[1] As a general rule, the Commissioner's explicit refusal to reopen a prior application is not subject to judicial review. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

also found medical impressions of auditory dyslexia, bipolar disorder, intermittent explosive disorder, panic attacks, borderline personality, and leg fractures were unsupported by medical evidence and/or of insufficient duration to qualify as a severe impairment. (Tr. 22.) At step three, he found medically established impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 25.) At step four, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work, "of an unskilled nature which involved simple 1 to 2 step tasks." (*Id*.)

In his step four findings, ALJ summarized Plaintiff's testimony, made credibility findings, and concluded Plaintiff's allegations lacked credibility. (Tr. 23-24.) He concluded Plaintiff could not perform his past relevant work, but his limitation to light unskilled work did not erode significantly the occupational base available to Plaintiff. (Tr. 26.) Applying the Medical-Vocational Guidelines (Grids), the ALJ concluded Plaintiff could perform other work in the national economy and was not "disabled" as defined by the Social Security Act. (*Id*.)

### ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) improperly rejected examining and non-examining medical source opinions; (2) erroneously denied Plaintiff's request for a continuance; (3) failed to assist Plaintiff by requesting more recent treatment records and ordering

1  a consultative physical exam; (4) improperly assessed his RFC; and

2  (5) erroneously relied on the Grids at step five. (ECF No. 14.)

3  **A.    Credibility**

4       In  his  Reply,  Plaintiff  appears  to  challenge  the  ALJ's

5  credibility findings, but fails to specify which findings were not

6  valid and unsupported by the record.  (ECF No. 22 at 8.)  Generally,

7  the court will not address issues that are inadequately briefed.

8  *Carmickle v. Comm of Soc Sec,* 533 F.3d 1155, 1161 n.2 (2008)(*citing*

9  *Paladin Assoc. v. Montana Power Co.* 328 F.3d 1145, 1164 (9th Cir.

10 2003)).  Nonetheless, *de novo* review indicates the ALJ's credibility

11 findings  are  "clear  and  convincing"  and  supported  amply  by

12 substantial evidence.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

13 Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

14 2007); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Light v.*

15 *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

16      Although credibility determinations are the sole province of

17 the  ALJ,  when  the  adjudicator  finds  a  claimant's  statements

18 regarding  the  severity  of  impairments  and  limitations  are  not

19 credible, he must make a credibility determination with findings

20 sufficiently specific to permit the court to conclude the ALJ did

21 not arbitrarily discredit claimant's allegations.  *Richardson,* 402

22 U.S. at 400; *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir.

23 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en

24 banc); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  When

25 assessing a claimant's credibility, the lack of objective medical

26 evidence is a proper factor to consider along with: a claimant's

27 treatment history; daily activities; effectiveness of medication;

28

work record; a claimant's reputation for truthfulness; inconsistencies in his testimony, or between his testimony and conduct; and observations of physicians and third parties with personal knowledge of the claimant's symptoms. *Tommasetti*, 533 F.3d at 1039; *Burch,* 400 F.3d at 680; *SSR* 96-7p. Here, after summarizing Plaintiff's hearing testimony, the ALJ specifically found Plaintiff's allegations regarding limitations caused by his impairments lacked credibility. (Tr. 23.)

In support of this finding, the ALJ found the medical evidence indicates Plaintiff's treatment and medication relieved and/or controlled his pain and symptoms, that there was no medical evidence to show Plaintiff's knee fracture in 2007 caused significant functional limitations that lasted more than twelve months, and that medical opinions from the examining orthopedist and examining psychologist in 2008 did not indicate disabling dysfunction from back or mental health impairments. The ALJ also referenced specific examples of Plaintiff's lack of candor about his drug use history, including repeated (and unexplained) urinalysis results positive for cocaine and the examining psychologist's observation of inconsistent report of drug use. (*Id.*; Tr. 333, 342, 442, 444.) Lack of candor about illegal drug use is sufficient to reject a claimant's testimony. *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999). In addition, the ALJ referenced Plaintiff's reported daily activities in support of the adverse credibility findings. As found by the ALJ, Plaintiff reported doing house work and yard work, walking for exercise, shopping, and an ability to pay bills, manage money, drive and use public transportation. (Tr. 23-24, 442.)

These reported daily activities are not consistent with Plaintiff's allegations of a total inability to work and, therefore, support an adverse credibility determination. *Tommasetti,* 533 F.3d at 1039; *Burch,* 400 F.3d at 680.

Where substantial evidence supports the ALJ's credibility determination, the court may not second-guess the Commissioner's interpretation even "where the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Morgan*, 169 F.3d at 599 (credibility determination is function solely of the Commissioner). The ALJ did not err in finding Plaintiff lacked credibility.

**B.    Step Two Findings - Severe Impairments**

Plaintiff asserts the ALJ "did not include nor consider as severe impairments, the claimant's history of a learning disorder, borderline IQ, ADHD, or auditory dyslexia, which are diagnosed and considered by several types of specialists." (ECF No. 14 at 17.) Plaintiff's argument is not supported by the ALJ's decision or by objective medical evidence, as required by the Regulations.

At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.,* one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or

"disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1157-58; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Here, the ALJ specifically addressed the conditions identified by Plaintiff in his briefing. (Tr. 22.) The ALJ reasonably determined objective medical evidence did not establish the referenced conditions as severe impairments. For example, the ALJ found the documented impression of auditory dyslexia was based on Plaintiff's subjective complaint, and no objective medical evidence was submitted to establish this diagnosis. (Tr. 22.) Plaintiff's statements to providers are insufficient to establish a severe impairment. 20 C.F.R. §§ 404.1508, 416.908. Further, as noted by the ALJ, examining psychologist Thomas Genthe, Ph.D., observed that Plaintiff had no problem following a conversation during his exam. (Tr. 22, 442.) The ALJ also discussed impressions of bipolar disorder, panic attacks, and intermittent explosive disorder that were found in the record, and found these impressions were not corroborated by treatment evidence, examining medical source opinions, or clinical observations. (Tr. 22.)

Regarding allegations of a learning disorder, borderline functioning, and ADHD, Plaintiff's conclusory assumption that these conditions exist, based on an unsupported observation by Dr. Goodwin in 2005 and 2006 when Plaintiff was actively using drugs, is insufficient to meet his step two burden. (ECF 14 at 17.) As found by the ALJ, nurse practitioner reports covering four years of treatment do not include clinical observations of these conditions,

and the acceptable medical sources did not include these diagnoses
in their diagnostic impressions.  (Tr. 22.)  Further, even assuming
these conditions could be established, Plaintiff's reported daily
activities, ability to manage his finances, and overall normal
mental status assessed by the examining psychologist (Tr. 442), do
not reflect cognitive functioning that would significantly impact
Plaintiff's ability to perform unskilled work.  *Edlund*, 253 F.3d at
1159-60.  Plaintiff's assertion that the ALJ did not consider non-
severe impairments fails.  The ALJ properly addressed the evidence
of these conditions and gave legally sufficient reasons for finding
them non-severe.

**C.   Evaluation of Medical Evidence**

After briefly presenting his interpretation of the evidence,
Plaintiff makes the general assertion that the ALJ failed to apply
proper legal standards in his decision.  (ECF No. 14 at 8-10.)
Plaintiff argues the ALJ improperly rejected or failed to address
findings of examining psychologists James Goodwin, Ph.D., and Thomas
Genthe, Ph.D., examining physician Gaffield, D.O., and reviewing
psychologist Mary Gentile, Ph.D.  (ECF No. 14 at 14, 17, 20.)
However, *de novo* review of the record in its entirety indicates the
ALJ's evaluation of the medical records reflects a reasonable
interpretation of the evidence in its entirety that is supported by
substantial evidence.

**1.   Acceptable Medical Sources**

**a.   Dr. Goodwin, Ph.D.**

As an examining psychologist, Dr. Goodwin's opinions must be

considered and can be rejected only with "clear and convincing" reasons.   If medical findings are contradicted by other medical source opinions, the ALJ's reasons for rejection must be "specific" and "legitimate."   *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995); *Andrews,* 53 F.3d at 1043.   The record shows Dr. Goodwin examined Plaintiff in September 2005 and in April and October 2006. Dr. Goodwin consistently diagnosed major depressive disorder, recurrent moderate, and polysubstance abuse in remission.   These diagnoses are reflected in the ALJ's step two findings.   (Tr. 20, 25, 193, 204, 216.)   In his evaluation summaries, Dr. Goodwin opined Plaintiff had "marked" limitations in the social functioning criteria.   The ALJ specifically rejected the marked rating because (1) the severity of the assessed limitation was inconsistent with the multiple diagnoses of moderate depressive disorder; (2) Dr. Goodwin did not have access to records from other providers during the same period that documented Plaintiff's ongoing substance abuse and noncompliance with prescribed medication; and (3) the evidence does not establish the duration requirement for an impairment of that severity.[2] (Tr. 23.)   These are "clear and convincing" reasons to reject an examining   medical source opinion.   Further, these

---

[2] A disabling impairment must last or be expected to last for a continuous period of 12 months.   20 C.F.R. §§ 404.1505, 416.905. The record should document all pertinent symptoms, signs and laboratory findings, as well as prescribed treatment, and the response to treatment in terms of changes in symptoms.   *SSR* 82-52 (Documentation).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  reasons are supported by substantial evidence and reflect a rational

2  interpretation of the record in its entirety.   *Vasquez v. Astrue*,

3  572 F.3d 586, 591 (9ᵗʰ Cir. 2009).

4      For example, as noted by the ALJ, in March 2006, Plaintiff

5  reported depression and anxiety to treating nurse practitioner Holly

6  Williams.   However, at that time, he was not on medication.   (Tr.

7  20, 350, 355.)   By May 2006, Ms. Williams noted he was stable on

8  depression medication, and his complaints of anxiety stopped when he

9  was compliant with prescribed daily medication.   (Tr. 345.)   Due to

10 problems with non-compliance, Plaintiff was required to sign a pain

11 medication contract in July 2006.   (Tr. 342.)   In October 2006, Ms.

12 Williams noted Plaintiff's unexplained urinalysis results positive

13 for cocaine and negative for his prescribed medication.   (Tr. 333,

14 342.)   Plaintiff's unexplained positive drug testing was discussed

15 repeatedly in clinic notes through January 2007.   (Tr. 330-37.)   The

16 record also shows that in early 2007, Plaintiff was incarcerated for

17 cocaine-related charges.   (Tr. 327.)   The ALJ reasonably concluded

18 mental limitations assessed during this time were affected by

19 Plaintiff's failure to take prescribed medication and use of illicit

20 drugs.   The ALJ did not err in giving little weight to the

21 limitations assessed by Dr. Goodwin.[3]

22

23 _____

24     [3]  Although Plaintiff argues that, according to Dr. Goodwin, he

25 had "zero math skills and severe impairments in reading and

26 understanding," (ECF No. 14 at 17), Plaintiff reported to Dr. Genthe

27 in 2008 that he was capable of counting money, making deposits and

28 withdrawals at the bank, paying his bills, making purchases, and

**b.   Dr. Gaffield, D.O.**

Dr. Gaffield examined Plaintiff at the agency's request in February 2008. (Tr. 21, 424.) In his functional assessment, he noted Plaintiff had a surgical repair of a fracture of the left knee in 2007, and had just completed physical therapy. (Tr. 425.) Dr. Gaffield opined Plaintiff was capable of sitting eight hours in an eight hour day, but specifically noted that "in view of the recent fracture involving the left lower extremity and the fact that he is currently under orthopedic care," he did not expect Plaintiff to walk or stand more than two hours during the eight hour day. (Tr. 429.) Plaintiff argues the ALJ erred in finding the limitation to two hours standing/walking did not persist beyond 12 months after the injury. (ECF No. 14 at 15; Tr. 22.) Plaintiff also contends "the Social Security Administration must assume [his standing/walking restrictions] are permanent." This contention is unsupported by the record and misconstrues the legal standards applicable to these proceedings.

As noted above, it is the claimant's burden to present medical evidence of an impairment, and it is solely the responsibility of the ALJ to evaluate the medical evidence and resolve ambiguities and/or conflicts. *Andrews*, 53 F.3d at 1039. Where substantial evidence supports the ALJ's interpretation of the medical evidence,

writing checks. (Tr. 445.) In addition, contemporaneous treatment notes from Holly Williams, ARNP, do not reflect significant cognitive deficits or an inability to understand and cooperate in medical care or function on a daily basis. (Tr. 345-55.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

the court will not second-guess his conclusions and findings. *Tackett*, 180 F.3d at 1097.  ALJ Hertzig met his burden when he thoroughly summarized Dr. Gaffield's findings and conclusions and made his RFC findings. *Magallanes*, 881 F.2d 751; (Tr. 21, 24, 429). Further, the ALJ properly discounted Dr. Gaffield's assessed limitation of no more than two hours standing due to a recent knee injury, explaining that the standing/walking limitation was assessed shortly after Plaintiff's knee fracture and surgery in late 2007. (Tr. 24.)  His finding that the medical evidence did not indicate ongoing "left leg pain, weakness and limitation of motion," (*id*.), is a "clear and convincing" reason to discount the standing limitation of two hours.  20 C.F.R. §§ 404.1509. 416.909 (impairments must be expected to last continuously for at least 12 months).  Plaintiff's speculation that his fracture "may" have lasted more that 12 months, is insufficient to meet his burden of proof.  Without supporting medical evidence to establish duration, Plaintiff's argument fails.

The ALJ also reasoned Plaintiff's reported activities of daily living throughout the record do not reflect the degree of limitation experienced during his recovery from knee surgery.  (Tr. 24, 360, 398-99.)  This is a clear and convincing reason to discount a medical opinion.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).  Finally, as discussed below, the ALJ found Plaintiff capable of performing a full range of light work, which includes a full range of sedentary work.  20 C.F.R. §§ 404.1567(b), 416.967(b). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§

404.1567(a), 416.967(a).  "Occasional" means very little, up to one third of the time (about two hours of an eight hour work day). *SSR 83-10*.  Because sedentary work requires only two hours of walking and standing, even if Plaintiff's unsupported assertion were credited, it would not change the outcome of these proceedings.  The ALJ's evaluation of and weight given to Dr. Gaffield's report is supported by substantial evidence and without error.

**c.   Dr. Gentile, Ph.D.**

In March 2008, following Dr. Genthe's examination, Mary A. Gentile, Ph.D., reviewed the medical evidence and completed a Psychiatric Review Technique and a RFC assessment in which she noted recent findings by Dr. Genthe that Plaintiff's behavior and interaction at the evaluation were inconsistent with his self-reported deficits.  (Tr. 449-65, 461.)  Based on her review, Dr. Gentile assessed moderate limitations the categories of attention and concentration, social interaction and adaptation and concluded Plaintiff was capable of "simple and well-learned complex tasks." (Tr. 463-65.)  In her narrative summary of the review, she noted Plaintiff "may have episodic lapses" in attention and concentration due to pain and psychological symptoms, and would do best away from the general public and co-worker interaction, and in a routine environment due to personality issues." (Tr. 465.)  Plaintiff argues the ALJ failed to include the moderate limitations assessed by Dr. Gentile.  (ECF No. 14 at 14.)  This argument is without merit.

The opinion of a non-examining psychologist such as Dr. Gentile cannot constitute substantial evidence unless it is supported by other medical evidence.  As acknowledged by Plaintiff, a non-

examining medical source opinion, by itself, cannot justify the rejection of an examining source opinion. ECF No. 14 at 13 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *see also Lester*, 81 F.3d at 830 (opinion of examining physician is entitled to greater weight than non-examining opinion). Further, a claimant's RFC is an administrative finding based on the entire record: no special significance is given a single medical source opinion. 20 C.F.R. §§ 404.1527(e), .1546; 416.927(e), .946; *SSR* 96-5p.

Here, the ALJ discussed Dr. Gentile's review of the evidence, noting it was generally consistent with his final RFC determination. (Tr. 24.) However, he specifically rejected Dr. Gentile's opinions regarding limited contact with the general public and co-workers because the evidence did not support these restrictions or a diagnosis of bipolar disorder. (Tr. 24.) The ALJ found reports from treating physician Eric Olson, M.D., and examining psychologist Genthe did not identify a basis for a significant personality disorder. These examining medical source findings are sufficient to reject a non-examining medical opinion.

Other evidence supports rejection of these functional limitations. As noted by the ALJ, on September 8, 2005, Plaintiff was assessed with depression, anxiety, cannabis dependence, and borderline personality by Julie Rickard, Ph.D., at Columbia Valley Community Health Services (CVCH). (Tr. 19, 22, 358.) However, this assessment was based on Plaintiff's statements at a time when he also reported chronic cannabis abuse. (Tr. 357-58.) In April 2006, Dr. Goodwin found Plaintiff generally cooperative and appropriate

with an unimpaired level of consciousness. (Tr. 203). Dr. Goodwin found no indication of current antisocial behavior and diagnosed a major depressive disorder (moderate) and alcohol abuse in remission for 18 months. (Tr. 204.) In May 2006, ARNP Holly Williams at CVCH reported the borderline personality condition was stable and Plaintiff was starting a job. (Tr. 345.) Therefore, the ALJ could reasonably infer from this evidence that the impression of borderline personality was unsupported by clinical observations and not reflected in mental health evaluations. (Tr. 22.) *Tommasetti*, 533 F.3d at 1040 (ALJ entitled to draw inferences flowing from the evidence). Plaintiff does not address these findings by the ALJ and does not cite to medical source evidence in the record that would arguably support Dr. Gentile's assessment of limitations due to a personality disorder. The ALJ's omission of personality disorder related symptoms is a rational interpretation of the entire record.

As for Dr. Gentile's summary conclusion of moderate limitations in Plaintiff's "ability to maintain attention and concentration for extended periods," she elaborated on her conclusions in Section III of the RFC assessment, stating specifically that Plaintiff was "capable of simple and well-learned complex tasks." (Tr. 465.) Although Dr. Gentile's comment that Plaintiff "may have lapses" in attention and concentration due to subjective symptom allegations is speculative, her narrative findings are consistent with the ALJ's determination that Plaintiff was limited to unskilled work "involving simple 1 to 2 step tasks." (Tr. 24.) Viewing the evidence in its entirety, including Plaintiff's lack of candor about his drug use and other problems with credibility (*see* Tr. 461),

ALJ's RFC determination reflects a reasonable interpretation of Dr. Gentile's conclusions and narrative elaboration, along with examining medical source observations and conclusions, clinic notes, and Plaintiff's self-reported daily activities.  The ALJ did not err in the weight given Dr. Gentile's non-examining opinions.

### 2.    Other Medical Sources - Holly Williams, ARNP; Caitilin Newman, MS NCC (Nationally Certified Counselor)

Referencing observations by Ms. Williams during routine follow-up exams at CVCH in 2006 and 2007, Plaintiff argues the ALJ "failed to recognize the severe impairments" of "thoracic muscle spasm and lumbar muscle spasm." (ECF No. 14 at 18.)  Plaintiff also references an assessment form in which Ms. Newman noted two marked limitations in Plaintiff's social functioning, and five marked "functional mental disorders."  (ECF No. 14 at 11; Tr. 266-69.)  Plaintiff argues this report was rejected erroneously by ALJ and supports a finding of "disabled."  (*Id.*)

Ms. Newman and Ms. Williams are "other sources" under the Regulations.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  Neither is an acceptable medical source and qualified to diagnose an impairment.  20 C.F.R. §§ 404.1513(a),(d)(4), 416.913(a),(d)(4); *SSR* 06-03p.  However, their opinions regarding how Plaintiff's impairments affect his ability to work must be considered and may be rejected only with specific, "germane" reasons.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The records from CVCH in their entirety show that at the same time Ms. Williams observed muscle spasms, she found no sensory loss,

no motor weakness, and intact balance and gait. (Tr. 348.) By May 2006, she noted Plaintiff was stable and doing well. (Tr. 353-54, 356.) In September 2006, Ms. Williams found Plaintiff was stable, exhibited normal mobility and curvature of the spine, no tenderness of the thoracic spine, and muscle spasms around the lumber spine. (Tr. 340.) The ALJ appropriately recognized medical evidence of muscle spasms in his summary of the medical evidence, considered Ms. Williams observations with the rest of the evidence, and incorporated her observations into his step four findings that Plaintiff was limited to lifting 20 pounds occasionally. (Tr. 19-24.) Further, as noted by the ALJ, on exam, Dr. Gaffield noted lumbar spasms and concluded Plaintiff could perform light work. (Tr. 21-22, 426, 428, 429.) The ALJ discussed and adopted Dr. Gaffield's assessment with respect to Plaintiff's back condition and ability to lift and carry. (Tr. 24.) Plaintiff's argument that muscle spasms observed by Ms. Williams and Dr. Gaffield were disregarded by the ALJ is unsupported by the record.

The evaluation form completed by Ms. Newman is dated May 17, 2007, and is not accompanied by treatment notes or a narrative report. (Tr. 266-69.) As a general rule, an ALJ is only required to explain why significant probative evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, ALJ Hertzig was not obliged to accept Ms. Newman's findings because they are brief, conclusory, unsupported by clinic notes or her personal observations, and unexplained by a narrative report. *Thomas*, 278 F.3d at 957 (brief, conclusory medical source opinion not probative). Plaintiff does not cite to evidence that supports Ms.

1   Newman's findings, other than his own subjective complaints which
2   were properly rejected as not credible by the ALJ.

3       Nonetheless, the ALJ addressed the assessment forms from Ms.
4   Newman and Ms. Williams, and gave them no weight because the
5   providers are not acceptable medical sources. (Tr. 25, 266-73.)
6   The fact that an "other source" is not an acceptable medical source
7   (*e.g.*, a licensed physician or psychologist) is a valid reason for
8   disregarding diagnoses contained in these forms. *SSR* 06-03p.
9   ("'Other sources' cannot establish the existence of a medically
10  determinable impairment.") Although the ALJ's reason is not a valid
11  reason for rejecting functional limitations included in these forms,
12  the error is harmless. Both assessment forms are conclusory and
13  unsupported by acceptable medical source evidence.[4]  Because these
14  "other source" form reports are not probative, remand to correct any
15  error would not change the outcome of these proceedings. Therefore,
16  the error does not require remand. *Stout v. Commissioner, Social*
17  *Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

18  **D.   Duty to Develop Record**

19      Plaintiff argues the ALJ erred when he refused to comply with
20  Plaintiff's request for assistance in providing records. He

---

22
23      [4]  It is noted on review that Ms. Williams assessment is
24  unsupported by her clinic notes, and is internally inconsistent.
25  Specifically, she confirms an indication of DAA, (Tr. 271), but does
26  not recommend treatment in spite of clinic notes that document
27  Plaintiff's positive test for cocaine. Significantly, she renders
28  no opinion regarding Plaintiff's ability to work. (Tr. 273.)

characterizes the ALJ's actions as a failure to develop the record. (ECF No. 14.at 14-15.)  However, an ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001)(*citing Tonapetyan,* 242 F.3d at 1150).  Plaintiff fails to show the evidence before the ALJ was ambiguous or inadequate to assess the record submitted by Plaintiff.

In disability proceedings, the initial burden of proof is on the claimant to provide medical evidence of an impairment. Objective evidence consisting of signs, symptoms, and laboratory findings is required; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  Once medical evidence is provided by the claimant, the Regulations state the agency "will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary."  20 C.F.R. §§ 404.1512 (d), 416.912 (d).

As directed by the Regulations, additional consultative exams are purchased after consideration of the existing medical record and a claimant's allegations contained in the disability interview. Only if there is a determination that the information is ambiguous or inadequate to support a decision (*i.e.*, includes no clinical findings, laboratory tests, or diagnoses) is additional evidence required.  The ALJ is required to seek additional evidence only if the evidence already present consistently favors the claimant. *Lewis v. Apfel*, 236 F.3d 503, 514-15 (9th Cir. 2001).  There is no

affirmative duty to order additional examinations. 20 C.F.R. §§ 404.1519a, 416.919a; *see also Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)(Commissioner has broad discretion in ordering consultative exams).

Here, the record shows the Social Security Administration (SSA) met its burden upon receipt of medical records up to and including October 2007, by ordering additional evidence in the form of a consultative physical exam, dated February 16, 2008, and a consultative psychological examination. (Tr. 423-30, 441-47.) In its request for evaluation, the agency specifically identified the alleged impairments to be considered: "bipolar/manic depression/spinal bifida/back fusion;" "gait & station, ability to use hands for grasping & manipulating, fine & dexterous movement; ability to perform work related activities." (Tr. 423.) As discussed above, the ALJ thoroughly evaluated the consultative examinations and reasonably found they supported his finding that Plaintiff was capable, at most, of light unskilled work. Plaintiff identifies no ambiguous information in the consultative reports that would reasonably require ordering additional evaluations.

Regarding Plaintiff's argument that remand is necessary to obtain records he claims existed at the time of the hearing, Plaintiff fails to show good cause for his failure to submit additional records after the hearing. On July 25, 2009, the SSA sent a compact disc of the existing record to Plaintiff's counsel, who was directed specifically to submit any additional records to support Plaintiff's application prior to the hearing. (Tr. 168-69.) As noted by the ALJ, Plaintiff and his representative were notified

of the October 2009 hearing on September 1, 2009. (Tr. 82-86.) In that notice, Plaintiff was advised again that he could submit additional evidence, and that it was "very important that the evidence in your file is complete and up-to-date." (Tr. 83.) At the hearing, neither Plaintiff nor his representative indicated new, probative records existed. The ALJ reasonably found good cause did not exist to continue the hearing. Further, Plaintiff has failed to show prejudice resulted due to the denial of a continuance.

Plaintiff and his representative were given the opportunity to submit evidence to the Appeals Council in his request for review of the ALJ's decision, evidence that would have been part of record on review by this court. (Tr. 14-15.) *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Finally, if there were relevant mental health records that were difficult to obtain prior to the Appeals Council review, Plaintiff could have filed them with his Complaint in this court for a determination of whether good cause existed for their lack of production prior to judicial review. 42 U.S.C. § 405(g); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991); *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). From these facts, it can reasonably be inferred that no additional records exist that are relevant to the period between 2007 and the date of the ALJ hearing, and, therefore, remand is not warranted. *Ortez v. Shalala*, 50 F.3d 748, 751 (9th Cir. 1995); *Burton*, 724 F.2d at 1417.

**E.   RFC Determination**

Plaintiff claims the ALJ's failure to account for all limitations "calls into question his overall determination" of

Plaintiff's RFC.  (ECF No. 14 at 13.)  However, as discussed in detail above, ALJ Hertzig's interpretation of the medical evidence in its entirety, as well as Plaintiff's credible testimony, is supported by substantial evidence and free of legal error.

Plaintiff appears to argue the ALJ erred when he failed to find non-exertional limitations caused by Plaintiff's limited skills in math, reading, and understanding. (ECF No. 14 at 17.) However, the inclusion of a restriction to unskilled work reflects these limitations.  "Unskilled work" involves simple duties that can be learned on the job and require little or no judgment. 20 C.F.R. §§ 404.1568, 416.968; *Terry v. Sullivan*, 903 F.2d 1273, 1276-77 (9th Cir. 1990).  As noted above, Plaintiff reported an adequate ability handle money, pay bills, and perform activities of daily living that require reading, writing and math.  Plaintiff offers no evidence that his limited academic skills prevent him from performing unskilled work.  Further, he has not demonstrated that depressive disorder symptoms significantly limit his range of work.  The record shows Plaintiff reported relief from medication, as long as he complied with prescribed treatment and did not abuse illegal drugs. (*See, e.g.,* Tr. 345.)  Impairments that are controlled effectively with medication are not disabling.  *Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

A review of the record in its entirety shows the final RFC includes all limitations supported by the record and Plaintiff's credible testimony.  Where, as here, the ALJ's findings reflect a rational interpretation of the entire record and are supported by substantial evidence, the court may not substitute its judgment for

that of the Commissioner.  42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews*, 53 F.3d at 1039 (findings supported by substantial evidence are conclusive); *SSR* 96-8p.

**F.   Application of the Grids**

Plaintiff argues that due to the presence of non-exertional limitations, the ALJ erred when he did not use a vocational expert in determining his ability to perform other work in the national economy.   He contends non-exertional limitations require the testimony of a vocational expert, and the ALJ's reliance on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2. (Grids) to make his determination was error.  (ECF No. 14 at 21.)

The Medical-Vocational Guidelines take administrative notice of over 2,500 medium, light, and sedentary unskilled jobs.  Where non-exertional limitations would not significantly erode an occupational base, application of the Medical-Vocational Guidelines is appropriate.  *Desrosiers v. Secretary of Health and Human Serv's,* 846 F.2d 573, 577 (9th Cir. 1988)("non-exertional limitations do not automatically preclude application of the grids"); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986).

In determining whether the Grids apply at step five, the ALJ must find whether non-exertional limitations "significantly" limit the range of work permitted by Plaintiff's exertional limitations. *Desrosiers*, 486 F.2d at 577 (*citing Razey*, 785 F.2d at 1430).   If the limitation is slight, use of the Grids is appropriate.  *Id.; see also Tucker v. Heckler,* 776 F.2d 793, 795-96 (8th Cir. 1985)(unnecessary to call vocational expert where ALJ thoroughly considered claimant's non-exertional impairments and explicitly

determined that they did not diminish claimant's exertional capacities).

As discussed above, the ALJ carefully considered non-exertional limitations supported by the credible evidence.  He properly rejected possible lapses in attention and concentration due to personality issues mentioned by Dr. Gentile.  (Tr. 24.)  Symptoms from depression and anxiety were found to be controlled effectively with medication.  Neither medical evidence nor Plaintiff's self reported activities support the duration of postural limitations noted in early 2008, shortly after Plaintiff's left knee surgery.

The ALJ reasonably determined Plaintiff's ability to perform light work was limited only by the mental limitation to unskilled work.  (Tr. 25.)  The record supports this conclusion and is consistent with Plaintiff's limited education and academic abilities.  Because the ability to perform light work includes the full range of sedentary work, the ALJ's finding that the identified non-exertional limitation did not significantly erode Plaintiff's occupational base is a rational determination supported by case law, the Commissioner's ruling, and substantial evidence in the record. *Desrosiers,* 486 F.2d at 577; *SSR* 83-10 (occupational base established by RFC includes all occupations at lower exertional level).  (Tr. 442, 444-45.)  The ALJ did not err in applying the Grids at step five.  Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(ECF No. 20)** is

**GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED.**

DATED February 7, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28